## PHILIP MILLHEISER et al., Appellants, v. L. M. LONG et al., Appellees.

### SYLLABUS BY THE COURT.

1. WATER RIGHTS—APPROPRIATION.—Capacity of ditch alone does not constitute a valid appropriation of water, unaccompanied by application of the water to some beneficial use.

2. WATER RIGHTS—PRIOR APPROPRIATION.—Where two ditches are receiving water from the same stream, one constructed in 1885 and the second in 1888, the owners of water rights in the first at the time the second is constructed have a prior appropriation of so much water as has been actually applied by them to some beneficial purpose, but sales of water rights by them for the use of water to be conducted through the first ditch in excess of valid appropriation, by the owners of water rights in the first ditch, after water has been diverted and beneficially applied through the second ditch, is void as to such excess as against the rights of valid appropriators through the second ditch.

3. WATER RIGHTS—PRIOR APPROPRIATION—PROOF OF.—Where the controversy involves the prior appropriation of water between those claiming water rights in two ditches constructed at different times, proof which fails to show what tract or tracts of land water was conducted upon, how much of the land, for what years, and what portion each year, is not sufficiently specific to base a decree upon as to the prior appropriation of the water, where numerous tracts of land and ten years' time are involved.

4. PRACTICE, TRIAL AND APPELLATE—FINDINGS OF FACT.—Where, in a cause tried by the court without a jury, the court fails to find material facts, which, being considered, demonstrate that the decree rendered in the court below was manifestly wrong, this court will consider such facts to enable the court to arrive at a just conclusion.

5. The doctrine of prior appropriation governs the distribution of water in this case.

*Appeal* from the District Court of Chaves County, Fifth Judicial District.   Reversed and Remanded with Directions.

Statement of the case by the court.

This cause was tried before Hon. H. B. Hamilton, at the time judge of the Fifth Judicial District, who decided the issues in favor of the defendants below, appellees in this court, and dismissed the bill with judgment for costs against complainants. Two of the complainants have brought the case to this court by appeal. This is a suit in equity, by which the complainants in the court below sought to establish rights claimed by them to the use of water from the Rio Hondo, in Chaves county, by virtue of an alleged appropriation for agricultural and horticultural purposes by the plaintiffs and their grantees through and by means of a ditch known as 'the Perry-Fountain and various laterals, constructed in the spring of 1888. It is alleged that the complainants had improved and cultivated 320 acres of land owned by them and had appropriated water to this land from the Hondo river. The defense is that in 1884 Leslie M. Long, Thomas Long and Scott Truxton constructed a ditch from the Hondo river several miles above the mouth of the Perry-Fountain ditch; that the Long-Truxton ditch had a capacity sufficient to carry all of the water of 'the Hondo at its normal flow; that by the construction of a dam in the river which diverted all of its waters into the Long-Truxton ditch the Longs and Truxton thereby had a prior appropriation of all the waters of the river. The defendants, Leslie M. and Thomas Long, further allege that in the year 1884, they, together with Scott Truxton and Margurite M. Long, made entry of about 3,000 acres of land under the homestead, pre-emption, timber culture and desert land laws of the United States; that they began to improve and cultivate this land from year to year, and that they had applied the waters of the river to about 200 acres of their land; that they had a prior right to all of the waters of said stream as against the complainants. Defendant Haynes asserts a prior right to water through the Long-Truxton ditch by virtue of a purchase of Truxton's timber culture claim by him. The Pecos Irrigation and Improvement Company allege that on the nineteenth day of December, A. D. 1887, the said Leslie M. Long, Thomas Long and Scott Trux-

ton, the owners of said Long-Truxton ditch, granted and conveyed unto Nathan Faffa and William S. Prager the right to use and convey by means of irrigation ditches all the water carried by the said Long-Truxton ditch, said water to be taken from said ditch at a point on the east line of the west half of the northeast quarter of section 3, in township 12, south of range 23 east, N. M. P. M., and also at a point on the west line of the southwest quarter of said section 3, which right was subsequently and prior to the institution of this suit, acquired by this defendant, and which right is stil' owned by this defendant. The defendant, The El Capitan Orchard Company, join in the answer of the Longs, and as to it the answer says: "These defendants, Leslie M. Long, Thomas Long and the El Capitan Orchard Company, deny that Leslie M. Long or any one else interested in the Long-Truxton appropriation of water from the Hondo have transferred and delivered any part of their appropriation of water to the El Capitan Orchard Company. That water from the Hondo in flood times (and there was abundance of water for all interested in the Hondo appropriation) has been used by the said El Capitan Orchard Company through the Long-Truxton ditch, and with the consent of the Leslie M. Long and Thomas Long, and at several times even when crops and growth at the Long ranch on the Rio Hondo were suffering for water, with the consent of the said defendants, water was used by the El Capitan Orchard Company." The bill further alleges that the Longs and Truxton abandoned any appropriation of water which they may have made by their failure to cultivate their lands and apply the water thereto from year to year in good faith, and also by selling and conveying to divers other persons and corporations named in the bill all of their rights and interest in the water flowing through the Long-Truxton ditch and the use thereof. The bill further alleges collusion between the Longs and the Orchard Company to deprive complainants of the use of water of said stream appropriated by them and prays for an injunction against these acts, and that the right of plaintiffs to the use

of the water be decreed to be superior to the rights claimed under the said Long-Truxton ditch, and that the right and title of plaintiffs be quieted as against all claims of the El Capitan Orchard Company, and all other person or persons, individual or corporations, claiming a right to the use of the waters of the Rio Hondo through the said Long-Truxton ditch, and for general relief. The bill was filed November 14, A. D. 1896, but the trial did not begin until the twenty-fifth day of March, A. D. 1897. On the twenty-ninth day of March, A. D. 1898, the court filed its decree dismissing complainant's bill, each of the parties paying one-half of the costs. From this decree Philip and Moses Millheiser appeal to this court.

FRANK SPRINGER, A. A. JONES, A. J. NESBIT for appellants.

G. A. RICHARDSON for appellees.

McFIE, J.—As a basis for the decree rendered in the court below, the court made numerous findings of fact and conclusions of law, all of which were duly excepted to, of which the following are deemed essential to the present review:

1. That the defendants herein, in conjunction with certain other persons, did in the year 1884, take out, build and construct a ditch from the south bank of the Hondo river, and did by means of said ditch divert and appropriate water from said stream for agricultural and domestic purposes; that said ditch was constructed of sufficient capacity to carry all the water then flowing in said Hondo river at its normal flow, or during the irrigation season.

2. The court doth further find that the said ditch when so completed, in the year 1885, conveyed all of the water which flowed in said Hondo river during the irrigation season; that the said ditch has not since its construction been enlarged.

5. The court doth further find that the said defendants

have never, since the date of their said appropriation of said water and the location and improvement of said land, abandoned or given up the same, but continued to use and apply said water upon said land and have continued to occupy, live upon, cultivate and improve the said land.

6. The court doth further find that the said defendants, from the time of the diversion and appropriation of said water, have continued with diligence, from year to year thereafter, to cultivate, improve and apply the water from said ditches to said land, and that during the irrigation season it required all of the water originally appropriated by said defendants for use in the cultivation of their said lands.

7. The court doth further find that the grantors of the complainants herein also went upon the said stream in the year 1888, and located upon certain lands, and took out a ditch, as mentioned and described in the bill of complainant herein; that the grantors of the complainants took up certain lands and sought to apply the water so diverted from said ditch to the cultivation and improvement of said lands.

8. The court doth further find that the appropriation and diversion of the water, so made by said complainants' grantors in the year 1888, was made subsequent to the time of the diversion, appropriation and application of the water of said stream to a beneficial use by the defendants herein, and was made subject to any rights which the defendants herein had acquired to the waters of said stream.

10. The court doth further find that the said complainants have no right to the use of the waters of said stream for irrigation, agricultural or domestic use as against the defendants herein.

Under the pleadings, the effect of the decree rendered by the court, is to deny to complainants the right to the use of any of the water of the Rio Hondo, and as the court will take judicial notice of the fact that the lands in question can not be successfully cultivated without irrigation, and as there is no other stream or source of water supply, shown to be available for the irrigation of those lands, it follows

that if the complainants are denied the use of any of the water of that stream, cultivation of their lands, which the answer admits, and the court finds that to be a fact, must cease, the lands become practically worthless, and rights formerly enjoyed by them, taken from them. In this view of the case we have examined the record with care, and have arrived at the conclusion that the court below erred in a reversible degree, as a result of a failure to observe the distinction between a diversion and appropriation of water, which led the court, in this case, to determine the rights of the parties, according to priority of diversion, rather than priority of appropriation to a beneficial use.

WATER rights: Appropriation. Diversion is one of several elements necessary to a legal appropriation of water, and while a valid appropriation may follow immediately upon the diversion of water from a stream by reason of a concurrence of the other necessary elements, it is still but an element of that appropriation, and is not equivalent to it. Water may be diverted from a stream, and still not be appropriated, and it is only when diversion is accompanied or followed by application to some beneficial purpose, that the water is appropriated so as to prevent a subsequent appropriator from acquiring a right to its use. It is not the capacity of the ditch merely that determines the appropriation of water, it is the amount actually applied to a beneficial use that is appropriated within the meaning of the law. It is clear that the law of prior appropriation governs in this Territory, and water rights must be determined by it. In 1876 the Legislature enacted a law which provided:

"All currents and sources of water, such as springs, rivers, ditches and currents of water flowing from natural sources in the Territory of New Mexico, shall be and they are by this act declared free." Section 52, Compiled Laws of 1897.

By this act private ownership of water in the public streams of the Territory was prohibited, and a right to the

use of such waters for beneficial purposes was given to those who appropriated and applied them to such uses.

In 1863, Congress enacted a law which in part provided:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same." Revised Statutes, 2339.

In 1877 an act was passed by Congress for the sale of desert lands, which contained in its first section this proviso (19 Statutes, 377):

"Provided, however, that the right to the use of water by the persons so conducting the same on or to any tract of desert land of 640 acres shall depend upon bona fide prior appropriation; and such right shall not exceed the amount of water actually appropriated and necessarily used for the purpose of irrigation and reclamation; and all surplus water over and above such actual appropriation and use, together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights."

In the case of the United States versus the Rio Grande Dam and Irrigation Company, a case decided May 22, 1899, the Supreme Court of the United States discusses the law of water rights as follows:

"Notwithstanding the unquestioned rule of the common law in reference to the right of a lower riparian proprietor to insist upon the continuous flow of the stream as it was, and although there has been in all western states an adoption or recognition of the common law, it was early developed in their history that the mining industry in certain states, the reclamation of arid lands in others, compelled a departure from the common law rule, and justified

an appropriation of flowing waters both for mining purposes and for the reclamation of arid lands, and there has come to be recognized in those states, by custom and by state legislation, a different rule—a rule which permits, under certain circumstances, the appropriation of the waters of a flowing stream for other than domestic purposes."

Mr. Kinney, in his able work on irrigation, says that to constitute a valid appropriation of water there must be:

"1.   A bona fide intention to apply the water to some beneficial purpose.

"2.   Notice of such intent.

"3.   Diversion of the water from its natural channel by construction of works within a reasonable time.

"4.   Actual application of the water to the land for some beneficial use, with due diligence and without unnecessary delay."

Mr. Kinney further says:

"An appropriation of waters can not be constructive, but must be actual.   As has been shown there must be, first, the bona fide intent to appropriate the waters of a stream and apply the same to some beneficial use or purpose.   Then, in connection with this intent, there must follow the physical acts necessary to constitute the actual appropriation of the water, which include the notice to the world of the intent, the surveys and commencement of the digging of the ditches, the building of flumes, or other works necessary, and their completion within a reasonable time after the notice; the actual diversion of the water appropriated from the natural stream into the appropriator's ditch; and finally the actual application of all the water appropriated and so diverted to some beneficial use or purpose.   No one of these acts can stand alone, but all are absolutely essential to the successful and valid completion of the appropriation." Ibid, pages 246, 247.

"The final element necessary to complete the appropriation is an application of all the water attempted to be appropriated to some beneficial use or purpose.   Not only

must there be an intent to apply the water to some such purpose, but as the consummation of that intention it must be actually applied within a reasonable time." * * * The true test as to whether the appropriation is a valid one is the application of the water to some beneficial use or purpose. And any delay for an unreasonable time in its application or a failure for a time to use the water, if it has once been applied, is competent evidence on the question of abandonment, and if such non-use be continued for an unreasonable period, it may fairly create a presumption of intention to abandon." Ibid, pages 254, 255.

The laws of this Territory do not require a written notice of intent as referred to by Mr. Kinney, and the failure to post such notice would not be fatal. The intent, however, with which water is diverted, it is necessary to gather from some source, in justice to subsequent appropriators, and the absence of the notice may have an important effect in determining the quantity of water sought to be appropriated.

The record shows that the only notice given was dated January 14, 1893, and in this notice the Longs and Truxton claimed 100 cubic feet per second, but as this notice was given long after the rights of both the complainants and defendants had attached, it is of no importance in the controversy. The record in this case is very complete and the bill of exceptions contains all of the evidence taken at the trial. An examination of this evidence shows that many of the material facts in the case are not disputed.

The court finds that the Long-Truxton ditch was constructed in 1885. The evidence shows that in 1884 Capt. Lee employed a man by the name of Danner to dig this ditch from the river to an old WATER rights: prior appropriation. Mexican ditch which had been constructed many years before. Danner dug the ditch, turned the water of the Hondo into it by erecting a dam in the river, and Lee paid him for his work. This ditch was from a quarter to half a mile long, from the

river to where it emptied into the old Mexican ditch, and the Mexican ditch emptied into an old dry arroyo, and through the arroyo the waters went back into the river again, above the point where the Perry-Fountain ditch was taken out of the river. In 1885 Leslie M. and Thomas Long and Scott Truxton took possession of this new ditch; also the old Mexican ditch; paid nothing for them; called it the Long-Truxton ditch, and the dam erected by Danner in the river having been destroyed, they erected a new dam to turn the water into the ditch. The water was still carried back to the river through the dry arroyo, but in 1886 the Longs and Truxton took out two small ditches running from the large portion of the ditch, a distance of about three miles to and upon land which, in the meantime, the Longs and Truxton had filed upon or entered under the land laws of the United States. These small ditches, which, according to the proof, carried 10 to 12 cubic feet of water per second when constructed, discharged into the arroyo; the surplus water in the large ditch was discharged into the arroyo just below the mouths of the small ditches, and was thus carried back into the river above the mouth of the Perry-Fountain ditch. The court found, as a fact, that the Perry-Fountain ditch was constructed in February, 1888, as alleged in the bill, in fact, this was admitted in the answer, and the ownership of the land by complainants was not denied by the answer. The evidence fully sustained this finding, there being no conflict of evidence as to the fact of the construction of the ditch; ownership of the lands by complainants; numerous laterals were taken out from the main ditch in 1888; that the owners of the land began cultivation of their lands, planting orchards, raising crops and making valuable improvements thereon. In fact, the answer of Long et al. in terms admits the settlement by Donohoe, Fountain and Danner upon the lands described in the bill, and their sale and transfer of said lands to the parties named in the bill, and that they did sometime within the year 1888, "Appropriate from the stream known as the Rio Hondo, in

the county of Chaves, certain waters through and by means of a dam and ditch, known as the Perry-Fountain ditch." In an additional finding the court found that the defendants Long and Truxton, in the year 1885, took up three thousand acres of land under the public land laws of the United States, and that at the time this suit was commenced the defendants had about "twelve hundred acres thereof in use, and had applied water from said ditches to such land and improvements." The evidence in the record wholly fails to sustain this finding. The defendants in their answer allege that they had taken up about three thousand acres, but the evidence fails to show any such amount. As to the amount of land in cultivation at the time of the suit was brought, November 14, 1896, there is no reliable evidence to sustain the finding of the court below. The evidence shows that there was not more than two hundred acres actually cultivated by the defendants, Long and Truxton, by means of water conducted through the Long-Truxton ditch up to 1890. There was an application of water, and therefore a prior appropriation of water to that extent by the defendants, Long and Truxton. There is evidence also that about twelve hundred acres were fenced up to 1897, but evidence fails to show a continuous application of water to the land not actually cultivated. The defendant, Leslie M. Long, does state that this land was irrigated, but it is evident from the testimony that the facts are, that some water was conducted through laterals and allowed to run over some portions of this land. The amount of land thus covered each year, what tracts of land or whether the same portions of the land was thus irrigated each year or not, the evidence wholly fails to show. To show that water was conducted upon the land for one or two years does not show an appropriation of water for a period of more than ten years, which this litigation involves. In fact, the evidence for the plaintiff is of such a general and indefinite character as to make it impossible to determine anything from it with certainty as to the amount of water that was applied to a

beneficial use upon the lands of defendants Long and Trux-
ton, nor upon what tracts of land, nor for what years, and
this is to a large extent true, as to the cultivated land also,
but the court was warranted in finding that water had been
conducted to and applied to a beneficial use upon two hun-
dred acres, which the testimony tends to show had been
reduced to cultivation up to the year 1890, when the Perry-
Fountain ditch and many laterals therefrom had been com-
pleted and were in use by the grantors of the complainants.

The 7th finding of the court is that the Perry-Fountain
ditch was second in point of time to the Long-Truxton ditch,
being constructed in 1888. The record shows that the com-
plainants in the court below and their grantors, upon the
completion of the Perry-Fountain ditch, took out numerous
laterals, began cultivation of their lands, planted orchards,
one of which had about 1,600 trees, and in all the complain-
ants had cultivated about as much land as the defendants,
up to the time this suit was brought in 1896, except as to the
cultivation by Haynes after his purchase. The record fur-
ther discloses that the complainants and their grantors ob-
tained water from the Rio Hondo through the Perry-Foun-
tain ditch, and cultivated these crops and orchards by the
application of it to their lands until 1896, when the El Capi-
tan Orchard Company began using water obtained through
the Long-Truxton ditch. In fact, there is no evidence of the
construction of any other ditch from the Hondo river. The
defendants, Haynes, El Capitan Orchard Company and the
Pecos Irrigation and Improvement Company claim under the
Long-Truxton ditch and laterals, as they did not construct a
new ditch from the Hondo river. The court made no findings
as to the rights of the last above mentioned defendants or as
to when any rights claimed by them attached. The word "de-
fendants" is used by the court in his findings, and this is equiv-
alent to holding that all of the defendants have the same rights
against the complainants.

Defendant Haynes purchased 160 acres of land from
Scott Truxton September 1, 1896, and Haynes testifies that

when he purchased the land it was not in cultivation. He further testifies that he constructed four miles of ditch, taking water from the Long-Truxton ditch. Undoubtedly the complainants owning water rights in the Perry-Fountain ditch would have a prior right to the use of the water over this defendant if his ditch was independent of the Long-Truxton ditch, and we are of opinion that the complainants' rights are superior, notwithstanding defendant's assertion of prior rights through the Long-Truxton ditch. This matter, however, will be considered later. The El Capitan Orchard Company, as the record shows, had no water rights in either the Long-Truxton or Perry-Fountain ditches, but the proof is clear that this company constructed about 15 miles of ditch and took water from the Long-Truxton ditch. The answer of Long and Truxton denies that they sold the company any rights in their ditch or the use of water therefrom. Leslie M. Long testifies that the company had no interest in the Long-Truxton ditch, but later on admits that he gave the company permission to take water from the Long-Truxton ditch, as he had a contract to build a ditch for the company. The court below made no finding of fact as to the rights of the company, but in dismissing the bill the court, in effect, awarded the Orchard Company superior rights to those of the complainants, notwithstanding the company's ditch was not constructed until 1896, and in so doing the court undoubtedly erred.

The defendant, Pecos Irrigation and Improvement Company, secured water through the Long-Truxton ditch by virtue of a purchase and conveyance from Jaffa and Prager, to whom the Longs and Truxton sold and conveyed the right to take water from their ditch. The conveyances from the Longs and Truxton, of which the record discloses three, are dated December 19, 1887, but as they were not acknowledged until July 3, 1891, they did not become effective until the latter date. Prager, however, testifies that he made the purchase in 1889. The record further discloses the fact that the company purchased from the Jaffas and Prager in September, 1896. It therefore

appears that the purchase by Prager and Jaffa and also the purchase by the defendant company were made after the rights of those owning water rights in the Perry-Fountain ditch had attached, at least to the surplus water not beneficially applied by the Longs and Truxton.

The court has examined the record evidence for the purpose of ascertaining the time when the rights claimed by defendants other than the Longs, originated, as the court below made no finding of facts as to them, and where the court below fails to find material facts, which being considered, demonstrate that the decree rendered below was manifestly wrong, this court has the right to consider all such facts disclosed by the record, as will enable the court to arrive at a correct and just conclusion. Proceeding then to the consideration of the rights of the defendants, Haynes, El Capitan Orchard Company and the Pecos Irrigation and Improvement Company, we find that the court below made no finding as to the sale of water or the use of water to be conducted through their ditch and laterals by the Longs and Truxton, but the record shows a large number of such sales and conveyances, not only to the other defendants, but also to numerous other persons.

By a warranty deed, dated December 19, 1887, acknowledged July 3, 1891, the Longs and Truxton conveyed to Nathan Jaffa and William S. Prager the right to use and convey by means of irrigation ditches all the water carried by the irrigation ditch known as the "Long ditch," said water to be taken from said ditch at a certain designated point.

On February 1, 1889, Leslie M. Long conveyed to Jaffa and Prager the absolute right and privilege of tapping his irrigating ditch for irrigation purposes.

On March 10, 1891, they conveyed to W. E. Palmer, by warranty deed, a water right in their ditch taken from the Hondo sufficient to reclaim 640 acres of land, which is covered by a ditch tapping the ditch of said Longs, said water right not to interfere with the priority right of the parties of the first part in cases of partial failure of water in the Rio Hondo.

On May 10, 1891, they conveyed a similar water right

with similar reservations of priority, to S. M. Folsom, for 615.52 acres of land.

On May 20, 1891, they conveyed a similar water right with a similar reservation, to. William P. Metcalf, for 453.52 acres.

On January 10, 1892, they conveyed a similar water right to Mark Whiteman, for 640 acres, without any reservation whatever.

On November 1, 1892, Long and Truxton, by warranty deed, conveyed to Marguerite M. Long, ten cubic feet of water per second; and on December 1, 1892, they conveyed to Mary L. Wells, five cubic feet of water per second.

On January 26, 1893, Leslie M. Long, conveyed all his interest in their ditch and appropriation for a stated consideration of $10,000 to C. C. Blodgett.

It thus appears that from 1889 to 1893, the Longs and Truxton attempted to convey water out of their ditch sufficient to irrigate 1,710 acres, reserving priority to themselves in case of drought, 640 acres' without any reservation, 15 cubic feet of water per second without any reservation, and in addition to this all the water carried by their ditch without reservation.

The intention of the Longs and Truxton in taking out their ditch was to apply the water in the irrigation and cultivation of the lands taken up by them. The answer alleges this specifically and denies that .the water was to be used for stock. The answer does not allege that the water was diverted for the purposes of sale, but does admit that it was sold to be used by others. It is true the answer avers that the water was sold temporarily for the purpose of enabling certain parties to prove up on desert land entries, and then revert to the Longs, and Truxton, and Leslie M. Long so swears, but reference to the deeds disproves this, as there is no such reservation contained in them, and as the law requires persons proving up on desert land, to swear that they are permanent owners of the water supply with which their lands have been irrigated, it will not be presumed that the parties purchasing these water rights

entered into a conspiracy to defraud the government, and Prager, who was a witness, denies that the purchase was temporary as testified by Long. The answer, therefore, makes definite the intention of the Longs and Truxton at the time the ditch was taken out. They had taken up about two thousand acres of public land, and no doubt they intended to use so much water as would enable them to make final proof, and to do this they would be required to fulfill the conditions upon which the government grants public lands. It must be borne in mind, however, that the desert land act was the only one which required that water be conducted upon each tract upon which final proof was made. Under the homestead and pre-emption acts very little cultivation and irrigation, together with residence and improvements, would establish the good faith required to be shown by those laws. So, also, under the Timber Culture Act a very small part of the amount entered was required to be cultivated and planted in trees. The entry of lands under those laws, therefore, does not establish an intention to beneficially apply water diverted to the entire tracts entered, but rather an intention to comply with the laws under which the lands were entered, which in this case the record shows to have been homestead, pre-emption, timber culture and desert land laws.

The action of the parties shows that the water was diverted by the Longs and Truxton for use upon their own lands, as they began to cultivate small portions of their land in 1886, and continued to do so until 1889, when the first sale of water took place, as testified by Prager. The Perry-Fountain ditch was using water from the Hondo when the Longs and Truxton began selling the water and rights in their ditch to other parties. The record shows that when Mr. H. Donahoo and others were about to take out the Perry-Fountain ditch they went to Leslie M. Long, who was managing the Long-Truxton ditch and interests, and asked if they could have the water not used by the Longs and Truxton. Mr. Donahoo testifies as follows:

"Q. Do you remember what Mr. Long said?

A. Told us we could have the water any time he was

not using it, and when there was more water than he used we could have the water.

Q. With that understanding you went on and took out your ditch and your laterals?

A. Yes, sir.

Q. He made no objection to your taking out the ditch at all?

A. None whatever."

Long substantially admits this in his testimony, and as this conversation occurred before any water was sold by the Longs, it is clear that it was the intention of the parties that the Perry-Fountain ditch was second only to the use of the water by the Longs and Truxton, and certainly to the surplus water. That there was a large quantity of water unused by the Longs and Truxton is clearly proven by these numerous sales of water, but it is also shown by the fact that the owners of the water rights in the Perry-Fountain ditch, the complainants and their grantors, cultivated portions of their land from 1889 until 1896, when this suit was commenced, by means of water unused by the Longs and Truxton, and which flowed back into the Rio Hondo above the mouth of the Perry-Fountain ditch.

WATER rights: prior appropriations: proof of.

One orchard of about 1,600 trees was grown, and complainants testify that they had about 340 acres in cultivation when the suit was brought in 1896. Undoubtedly, therefore, the complainants and their grantors diverted and made a beneficial use of the water unused by the Longs and Truxton from the time of the completion of the Perry-Fountain ditch until the suit was brought, and prior to its use by any of the persons to whom the water had been sold. This, the complainants had a legal right to do, and their appropriation of so much of the waters of the Rio Hondo as was applied to a beneficial use by them upon their lands prior to an appropriation by defendants, Haynes, El Capitan Orchard Company, and the Pecos Irrigation and Improvement Company, constituted a valid prior appropriation as against the last named defendants, and in dismissing the bill as to those defendants, the

court below committed error, to correct which this cause must be reversed.

These defendants assert the right of priority by virtue of these sales and purchases of water on the ground of the appropriation of the Longs and Truxton.

In the brief of counsel for the defendants it is contended that the defendants, Long and Truxton, have a legal right to sell water as they did, because they had made a prior appropriation of all the water of the Rio Hondo during the irrigation season, and the court below, as a matter of law, sustained this contention; but as this conclusion of the court is not based upon diversion and application to a beneficial use, both of which are necessary to a legal appropriation, it was erroneous. The diversion of the water in this case was in fact simply turning the waters of the Rio Hondo into a new channel. The Longs and Truxton took possession of a large ditch constructed by others, which, having been washed out, was of sufficient capacity to carry all of the water of the stream into an old Mexican ditch which had been constructed many years before, and from this old ditch the water was returned to the Hondo above the Perry-Fountain ditch through an arroyo. The Longs and Truxton erected a dam in the Hondo, thus changing the channel of the stream, but this did not constitute an appropriation, except to the extent that the water was conducted upon the lands and used for some beneficial purpose. The Longs and Truxton had a perfect right to change the channel as they did, as it did not interfere with the prior rights of others, but all the water of the stream did not belong to them by this diversion alone. Under such a construction of the law, the first person who·diverts the water from the stream, may have a monopoly of all the water of any stream, by simply making this ditch large enough to conduct it from the usual channel. There need be but one appropriation, and all other settlers upon such stream must pay tribute to the person making the first diversion. This is not the law governing water rights in this Territory where the waters of natural streams are declared to be free to those who apply them to a beneficial use, until all are thus appropri-

ated.   Mr. McKinney in his work on irrigation has this to say on this subject:

"Under the later decisions relative to the capacity of the ditch being the limit of the extent of the appropriator's rights in and to the waters of a stream, it is held to be against the general policy of the entire modern system of the doctrine of appropriation that the greatest good shall accrue to the greatest number.   For if this was the law upon the subject a person might lay claim to the water of whole rivers for the ostensible purpose of irrigating immense tracts of land, which with the utmost diligence would take years to accomplish; and although others might intervene and attempt to appropriate the water of a stream, they could only lay claim to it for a temporary period of time, and until the works of the first appropriator were eventually completed, and they would then be deprived of their appropriation."

Thus would the way for speculation and monopoly be opened and the main object of the law defeated.

It is apparent that the Longs and Truxton assumed the right to sell the water of the river simply because it ran through what they claimed to be their ditch, and not because the same was appropriated upon their lands.   These sales of water were not only in violation of the understanding between the Longs and Donahoo and others who constructed the Perry-Fountain ditch, but it was contrary to the law governing water rights in this Territory, except to the extent to which the Longs and Truxton had made a valid appropriation.   That the use of the water, held by virtue of a valid prior appropriation, is the subject of sale and conveyance, is undoubtedly true, but the Longs and Truxton had no right to sell and convey the surplus water of this stream, after the rights of complainants and their grantors attached by a valid appropriation through the Perry-Fountain ditch in 1888 and 1889, nor had the parties purchasing after such appropriation any right to interfere with it.   The Longs and Truxton had a perfect right to sell their own water rights to the extent of their

valid appropriation, but they could not sell and retain the water at the same time. If they sold their water rights or any part of them, such sale was an abandonment of their right to the use of the water sold, and the purchaser succeeded to their rights to the extent of the purchase. The conveyances show that the Longs and Truxton sold the right to use water on more land than the grantors ever claim to have applied water upon, continuously or otherwise, that is about 1,700 acres. This water was sold for a money consideration, and except to the extent of the two hundred acres in cultivation, it was pure speculation, and illegal so far as it interfered with the appropriators of water through the Perry-Fountain ditch, the complainants in this case.

It is difficult to understand how the court below arrived at the conclusions stated in the 6th finding of fact as the evidence wholly fails to sustain the finding.

"6. The court doth further finds that the said defendants, from the time of the diversion and appropriation of said water, have continued with diligence, from year to year thereafter, to cultivate, PRACTICE: trial improve and apply the water from said and appellate: findings of fact. ditches to said land, and that during the irrigating season it required all of the water originally appropriated by said defendants for use in the cultivation of their said lands."

That the cultivation of additional land and application of water thereon were not carried on with diligence and in good faith, appears from the evidence of Defendant Haynes. He testifies that he purchased his land from Truxton in 1896, that at that time there was no cultivation upon it, and that he reduced 160 acres to cultivation. He testifies that there were only about 300 acres of the Long-Truxton land in cultivation at that time, including his own. Deducting his 160 acres from that amount, leaves only about 140 acres of the Long-Truxton land in cultivation in 1896, a less quantity than in 1889, a period of six or seven years. It

thus appears that when the Longs and Truxton began selling water, they practically ceased to reduce any additional land to cultivation or apply water thereto. This shows both a want of diligence, and an unreasonable delay in appropriating water to additional land after 1889, which would authorize the appropriation of water unused by the Longs and Truxton by the complainants, and the intention of those defendants to sell, rather than apply water to their own lands, is clearly manifest after 1889. The further fact that the complainants and their grantors received water through the Perry-Fountain ditch, and cultivated land and orchards by the use of it, shows that the Longs and Truxton did not use or require all of the water as stated in that finding. The evidence shows that complainants' supply of water did not fail except at short periods, when the river was dry or very low, until Leslie M. Long turned the water into the El Capitan Orchard Company's ditch in 1896, and this action caused the complainants to bring the suit. From what has been said it is manifest that the rights of complainants were being invaded and interfered with by the defendants, and that the conclusion and decree of the court was clearly wrong in denying the complainants any relief whatever against any of the defendants. The decree of the court below can not be sustained upon the record, and the ends of justice require its reversal. The complainants request this court to finally determine and settle the rights of the complainants in this court, but we are unable to do so upon the evidence submitted, as it is of such an indefinite character, especially as to the quantity of land cultivated, and to which water was actually applied by either the complainants or defendants, that we are unable to ascertain with certainty what the rights of the parties were at the time the suit was brought. The interests of justice will be subserved by remanding this cause for a new trial, that more specific evidence may be produced from which the rights of parties may be determined with certainty. There is another reason which in our judgment requires remanding of this cause.

The lands claimed by the defendants were public lands, and the record fails to show that final proofs were made thereon so as to vest title in the defendants, Longs and Truxton. Unless this proof was made, these lands have reverted to the public domain, and the defendants would be without rights to water upon those lands. Additional proofs will determine this, and such proof should have been produced on the former hearing of this cause.

The decree of the court below will be reversed and the cause remanded for a new trial, with directions to the lower court to require more specific evidence upon which to base a decree defining the rights of the parties herein.

Mills, C. J., Parker and Crumpacker, JJ., concur.

[821. May 3, 1900.]